[9, 11, 18]

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                     :

DANIEL TRIPO,               :       Civ.  No. 11-2050 (FLW)
                     :

        Plaintiff,     :

                     :
        v.              :            **OPINION**
                     :

ROBERT WOOD JOHNSON MEDICAL  :
CENTER, SYLVIANA BARSOUM, M.D., :
RENU CHHOKRA, M.D., and ARLEEN    :
LAMBA, M.D.,               :

        Defendants.    :
                     :
_____:

**WOLFSON, United States District Judge:**

      Presently before the Court is a Motion for Summary Judgment by Defendants Sylviana

Barsoum, M.D. ("Barsoum"), Renu Chhokra, M.D. ("Chhokra") and Arleen Lamba, M.D.

("Lamba") (collectively referred to as "Defendants") to Dismiss Plaintiff's Complaint for Failure

to Serve a Notice of Claim, as well as a Motion for Leave to File a Late Notice of Claim by

Plaintiff Daniel Tripo ("Plaintiff" or "Tripo").  The instant motions arise out of a medical

malpractice suit instituted by Plaintiff for injuries allegedly suffered while Plaintiff was

undergoing surgery on January 12, 2010.  Specifically, Plaintiff contends that Defendants were

careless, reckless and negligent in administering anesthesia, and that Plaintiff suffered severe

injuries and emotional distress as a result.  For the reasons that follow, the Court finds that

Plaintiff's suit is barred by the provisions of the New Jersey Tort Claims Act, N.J.S.A.  § 59:1-1

et seq.[1]


I.    **FACTUAL BACKGROUND**

On or around January 6, 2010, Plaintiff suffered severe injuries as a result of a car

accident.  Following the accident, Plaintiff was admitted to Robert Wood Johnson Medical

Center ("RWJ") where he remained until January 14, 2010.  Upon his admission to RWJ on

January 6, Plaintiff's wife signed a form consenting to medical treatment on behalf of Plaintiff

which provides, in relevant part:

> I understand that the Robert Wood Johnson University Hospital . . . is affiliated
> with the State of New Jersey, University of Medicine and Dentistry of New
> Jersey, the State's university of health sciences. I understand that some attending
> physicians who may provide my care and treatment at RWJUH may include
> physicians who are clinical faculty members employed by the State of New Jersey
> - UMDNJ.  These physicians also wear nametags that clearly identify their
> association with the State of New Jersey – UMDNJ.  I understand that I may also
> be cared for and treated by medical fellows, residents, and students under the
> supervision of attending physicians, and that, in many instances, these fellows,
> residents and students are employees of the State of New Jersey – UMDNJ.

Kontos Cert., Ex. G.

On January 12, 2010, Plaintiff was diagnosed with a fractured sternum and underwent

surgery under general anesthesia.  The anesthesia was administered by Defendants Barsoum,

Chhokra and Lamba, each of whom was employed by University of Medicine and Dentistry of

---

[1]In that regard, the Court notes that on December 19, 2011, Defendants filed a second
motion for summary judgment.  Because this Court finds that Plaintiff's claims are barred by the
New Jersey Tort Claims Act, Defendants' second motion for summary judgment is moot. [Dkt.
18].

New Jersey ("UMDNJ") at UMDNJ-RWJ Medical School in New Brunswick, New Jersey.   In the performance of their duties, Defendants aver that they were wearing identification cards stating in red letters "UMDNJ" and "University of Medicine and Dentistry of New Jersey." Defs' Br. ¶ 9.  Plaintiff alleges that during the surgery he "was awake but paralyzed and was aware of the surgery which was terrifying and painful." Pl's Aff. ¶ 2.  Indeed, immediately following the surgery, Plaintiff "reported to the medical staff that [he] was awake during surgery and felt pain related thereto." Id.  Moreover, it appears that Plaintiff discussed his awareness during surgery with Dr. Barsoum.  Specifically, Dr. Barsoum reported that he told Plaintiff that the anesthesia amount Plaintiff received "should have been adequate" and that in the future Plaintiff should "inform all anesth[esia] providers of recall episode as patient may need higher anesth[esia] doses."  Lenza Dec., Ex. C.

On or around March 2, 2010, Plaintiff retained Amabile & Erman, P.C., to investigate a potential medical malpractice case against RWJ and the medical personnel who provided anesthesia during his surgery.  Pl's Aff. ¶ 4.  On or around March 3, 2010, counsel for Plaintiff sent a letter to RWJ requesting Plaintiff's medical records. Plaintiff received no response.  On or around May 19, 2010, counsel for Plaintiff again requested Plaintiff's medical records. On October 28, 2010, RWJ provided Plaintiff's counsel with the records requested.  A copy of these records was received by Plaintiff's counsel on November 1, 2010.  Lenza Dec. ¶ 12.

Subsequently, on April 11, 2011, approximately 16 months after the surgery, Plaintiff filed the instant Complaint against Defendants and RWJ in the United States District Court for the District of New Jersey.  Defendants filed an answer to Plaintiff's Complaint on June 9, 2011 asserting, in relevant part, that Plaintiff's recovery is barred by the provisions of the New Jersey

Tort Claims Act, N.J.S.A. § 59:1-1.   Thereafter, on August 5, 2011, Defendants filed the instant

Motion for Summary Judgment requesting dismissal of the Complaint for Plaintiff's failure to

serve a timely notice of claim pursuant to N.J.S.A. § 59:8-8.   On August 9, 2011, Plaintiff filed a

Notice of Claim with the Office of the Attorney General and the New Jersey Department of the

Treasury.   Lenza Aff., Ex. D.   Subsequently, on August 11, 2011, Plaintiff filed a Motion for

Leave to File a Late Notice of Claim.


## II.      STANDARD OF REVIEW

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing

the facts in the light most favorable to the non-moving party, the moving party is entitled to

judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d

Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P.

56©.  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a

reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d

418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In

determining whether a genuine issue of material fact exists, the court must view the facts and all

reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem,

298 F.3d 271, 276-77 (3d Cir. 2002).  For a fact to be material, it must have the ability to "affect

the outcome of the suit under governing law."  Kaucher, 455 F.3d at 423.  Disputes over

irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue

4

of material fact.  Celotex Corp., 477 U.S. at 323.  Once the moving party has met this burden, the

nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a

genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258

(D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the

nonmoving party must identify specific facts and affirmative evidence that contradict those

offered by the moving party.   Anderson, 477 U.S. at 256-57.  "A nonmoving party may not 'rest

upon mere allegations, general denials or . . . vague statements . . . .'"  Trap Rock Indus., Inc. v.

Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v.

Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Moreover, the non-moving party must present

"more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v.

County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  Indeed, the plain language of Rule 56©

mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

        Moreover, in deciding the merits of a party's motion for summary judgment, the court's

role is not to evaluate the evidence and decide the truth of the matter, but to determine whether

there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the

province of the fact finder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363

(3d Cir. 1992).


III.    DISCUSSION

The New Jersey Tort Claims Act (the "NJTCA" or the "Act") states that "[n]o action shall be brought against a public entity or public employee under [the NJTCA] unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this Chapter." N.J.S.A.. § 59:8-3. The purpose of the Act is to "reestablish the immunity of public entities while coherently ameliorating the harsh results of the [sovereign immunity] doctrine." Beauchamp v. Amedio, 164 N.J. 111, 115 (2000). The Act requires that certain procedures be followed prior to bringing suit against a public entity. Specifically, and in relevant part, the Act requires a claimant to sign and file a notice of tort claim (a "Notice of Claim") with the public entity within 90 days from accrual of the cause of action. Id. at § 59:8-8.[2] Importantly, the Act provides that a " claimant shall be forever barred from recovering against a public entity or public employee if . . . [h]e failed to file his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 59:8-9." Id. The purpose of the notice requirement under N.J.S.A. § 59:8-8 is: "(1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense; (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) to inform the State in advance as to the indebtedness or liability that it may be expected to meet." Moon v. Warren Haven Nursing Home, 182 N.J. 507, 514 (2005) (quoting Beauchamp, 164 N.J. 111, 121-22

---

[2]Specifically, the Act provides, "[a] claim relating to a cause of action for death or for injury ... to person ... shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action. After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law." Id.

(2000)) (internal quotation marks and citations omitted).

The Act does provide a limited exception to the ninety day requirement where "extraordinary circumstances" exist for the claimant's failure to timely file.  Specifically, section 59:8-9[3] provides that a court has discretion to allow late filing of a Notice of Claim if made within one year of the claim accrual date provided that: (1) the claimant seeking to file a late claim shows reasons constituting "extraordinary circumstances" for the claimant's failure to meet the 90-day filing requirement; and (2) that the defendant(s) are not "substantially prejudiced thereby." N.J.S.A.. § 59:8-9.  The existence of "extraordinary circumstances" is to be determined by a court on a case-by-case basis.  Rolax v. Whitman, 175 F.Supp.2d 720, 730-31 (2001), aff'd, 53 F. App'x. 635 (2002); S.P. v. Collier High Sch., 319 N.J.Super. 452, 465 (App.Div.1999).  In that regard, the New Jersey Supreme Court has explained that the purpose of adding the phrase "extraordinary circumstances" in the 1994 amendment to the NJTCA was to "raise the bar for the filing of late notice from a 'fairly permissive standard' to a 'more demanding one.'" Beauchamps v. Amedio, 164 N.J. 111, 118 (2000).

In Beauchamp, the New Jersey Supreme Court explained that "in determining whether a notice of claim under N.J.S.A. § 59:8–8 has been timely filed, a sequential analysis must be

---

[3]N.J.S.A. § 59:8-9 provides in relevant part: "A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of [the Act], may, in discretion of a judge ... be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of [the Tort Claims Act] or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter...." Id.

undertaken." 164 N.J. at 118.  First, the court must determine when the claim accrued.  "The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual."  Id. Once the date of accrual is ascertained, the court must then determine whether a notice of claim was filed within ninety days.  Id.  If not, the court must then decide whether extraordinary circumstances exist justifying a late notice.  Id.  Importantly, the New Jersey Supreme Court cautioned that "[i]t is a common and regrettable occurrence for accrual and extraordinary circumstances to be treated as interchangeable and for courts and litigants to overlook the primary question of accrual and directly confront the ultimate question of extraordinary circumstances. What is important is to understand the framework of a Tort Claims notice analysis and to follow it."  Id.

In the instant matter, the parties do not dispute that the claims at issue in these motions are claims against physicians employed by UMDNJ, a public entity, and, as a result, that Plaintiff was required to file a Notice of Claim pursuant to the NJTCA.  However, Plaintiff contends that the accrual date of his cause of action should be tolled, pursuant to the discovery rule, until March 2011, the date he received a report form an expert opining that Defendants were potentially negligent in rendering anesthesia.  In contrast, Defendants contend that the accrual date for Plaintiff's cause of action was January 12, 2010, the date of Plaintiff's surgery, and, therefore that Plaintiff is barred from recovering from the public entity.  In the alternative, Defendants argue that even if this Court tolled the accrual date until March 2011, Plaintiff still did not file a notice of claim until August 2011, well after the 90 day period for filing and that Plaintiff has not demonstrated any extraordinary circumstances sufficient for this Court to exercise its discretion under the NJTCA.

a.      When Plaintiff's Claim Accrued

The NJTCA defines accrual as "the date on which the claim accrued and shall not be affected by the notice provisions contained herein." N.J.S.A.. § 59:8-1. The comment to N.J.S.A. § 59:8-1 provides that the term accrual under the NJTCA shall be defined according to relevant law in the private sector. Beauchamp, 164 N.J. at 116 (citation omitted). As established by New Jersey case law, the date of accrual of a claim in cases of tortious conduct generally shall be the date on which the negligent action or omission occurred. Id. at 117 (citations omitted). The only exceptions to this notion of accrual is a situation when the victim is either not aware of the injury or, regardless of awareness of the injury, does not know that some third party is responsible for the injury. Id. (citation omitted). Such exception is known as the discovery rule.

In the instant matter, it is undisputed that Plaintiff underwent surgery on January 12, 2010 under general anesthesia. Moreover, Plaintiff admits that following surgery, he reported to the medical staff that he was awake during the surgery and felt pain related thereto. Tripo Aff. ¶ 2. Indeed, Plaintiff's medical records, which he received on November 1, 2010, indicate that immediately following the surgery, Plaintiff had a conversation with Dr. Barsoum regarding the amount of anesthesia he received during surgery and that, in the future, Plaintiff should advise any physicians providing anesthesia that he may need higher amounts of anesthesia. Lenza Dec., Ex. C. Despite these facts, Plaintiff contends that the date of accrual should be tolled, pursuant to the discovery rule, from January 12, 2010 to March, 2011, the date that Plaintiff received the opinion of an anesthesia expert opining that Defendants were potentially negligent in rendering anesthesia. The Court does not agree.

Under the "discovery rule," the statute of limitations does not begin to run until the injured party becomes aware, or should become aware, of the existence of his or her injury, or that the injury is due to the fault of a previously unidentifiable individual or entity. See Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 425(1987); Lopez v. Swyer, 62 N.J. 267, 273 (1973); Fernandi v. Strully, 35 N.J. 434 (1961). By its own terms, this exception applies only where the injured party has no reason to know of the existence of a claim. Lopez, 62 N.J. at 273. Indeed, the discovery rule "provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Id. at 272. Indeed, as the New Jersey Supreme Court has explained, "[o]nce a person knows or has reason to know this information, his or her claim has accrued since, at that point, he or she is actually or constructively aware 'of that state of facts which may equate in law with a cause of action.'" Abboud v. Viscomi, 111 N.J. 56, 63 (1988) (quoting Burd v. New Jersey Tel. Co., 76 N.J. 284, 291 (1978)).

For example, in McDade v. Siazon, 2011 WL 6413840 (N.J. Sept. 27, 2011) at *8, the New Jersey Supreme Court recently considered whether to delay the accrual of plaintiffs' claims against Egg Harbor Municipal Utility Authority, the owner of a pipe protruding from a sidewalk over which plaintiff tripped. There, the court held that the discovery rule did not apply since, on the date of the accident, plaintiff was aware that he "had been injured by the pipe and that the owner of the pipe was potentially liable for that injury. The fact that plaintiffs were not immediately aware of the true identity of the pipe's owner does not alter the analysis." Id. Indeed, the court explained that "[p]laintiffs did not act with the reasonable diligence required by

10

the discovery rule. There is no indication that plaintiffs ever inspected the pipe to determine whether its owner could be identified, either by a designation on or near the pipe itself, or by confirming its function as a component of the MUA's waste treatment system.  There is no evidence that plaintiffs searched the public record, inquired about the ownership of the pipe. . .or took any affirmative steps to determine the identity of the pipe's owner. Given plaintiffs' awareness of the injury, and their knowledge that the entity responsible for the pipe was a potential tortfeasor, the discovery rule does not toll the date of accrual of plaintiffs' cause of action." Id.

Taking the latest possible date first, i.e., March 2011, the Court finds that nothing in the record demonstrates that the discovery rule should apply to toll the accrual date to that date. Here, it is undisputed that Plaintiff underwent surgery on January 12, 2010, and that immediately following surgery, Plaintiff  reported to the medical staff that he was awake during surgery and felt pain related thereto.  Moreover, the record demonstrates that at or around the time of his admission to RWJ, Plaintiff's wife signed a form consenting to medical treatment on behalf of Plaintiff which stated that he understood that "some attending physicians. . . are clinical faculty members employed by the State of New Jersey – UMDNJ."  Kontos Cert., Ex. G.  Further, the consent form explained that the state-affiliated physicians wear nametags that identify their association with the State of New Jersey.  Indeed, Defendants aver that, at the time of Plaintiff's surgery, they were indeed wearing identification cards which stated in large red letters "UMDNJ" and "University of Medicine and Dentistry of New Jersey."  In addition, Plaintiff avers that he retained counsel on or around March 2, 2010 to investigate a potential malpractice case against RWJ and the medical personnel who provided anesthesia during his surgery.  In that regard,

11

counsel for Plaintiff wrote to RWJ requesting Plaintiff's medical records on March 3, 2010 and

May 19, 2010, and Plaintiff received the records on November 1, 2010.   However, these facts

alone do not support Plaintiff's request to toll the accrual date until March 2011, the date

Plaintiff received an expert report opining that Defendants were potentially negligent in

rendering anesthesia.   Indeed, it is well-established that under the NJTCA, a plaintiff's time to

sue begins to run when he or she becomes aware of facts of an injury and a causal relationship

which may give rise to a cause of action.  Burd, 76 N.J. at 291.   As the New Jersey Supreme

Court has explained, the applicable limitations period is not tolled until a plaintiff

> learns from a lawyer that those facts equate with a legal cause of action against the
> producer or originator of the injurious source or cause.  It was not our intent . . . to
> hold that a claimant's time to sue, for limitations purposes, does not begin to run
> until he knows or is advised by a lawyer that facts of which he does, or should,
> reasonably have knowledge, give rise to a legal cause of action against a particular
> defendant. The statute of limitations necessarily imputes conclusively to a
> claimant knowledge that the law affords or may afford a cause of action on the
> basis of those facts of injury and causal relationship which in law do evoke a
> cause of action. . . The discovery principle modifies the conventional limitations
> rule only to the extent of postponing the commencement of accrual of the cause of
> action until plaintiff learns, or reasonably should learn, the existence of that state
> of facts which may equate in law with a cause of action.

Id.

Applied here, although Plaintiff may not have learned that he had a legal cause of action

against Defendants until he received the expert report in March 2011, the discovery rule does not

toll the accrual date until a claimant knows that he has a legal cause of action against a particular

defendant.  Burd, 76 N.J. at 291.   Moreover, it is undisputed that Plaintiff received his medical

records on November 1, 2010 and that these records contained the identities of Defendants in this

action. Armed with this knowledge, and with any reasonable diligence, Plaintiff could have

learned that Defendants were public employees.  Thus, the Court rejects Plaintiff's contention that the date should be tolled until March 2011.

Next, the Court must consider whether the date of accrual is January 12, 2010 or whether the discovery rule applies to toll the accrual date to another date such as November 1, 2010, the date on which Plaintiff received his medical records.  However, for the reasons discussed below, the Court need not determine whether the discovery rule applies to toll the accrual date in this matter[4] because, even assuming that Plaintiff's cause of action did not accrue until November 1, 2010, Plaintiff did not timely file a Notice of Claim and, moreover, Plaintiff has presented no extraordinary circumstances that would warrant this Court's discretion in permitting him to file a late Notice of Claim.

b.      Was Notice of Claim Timely Served

Under Beauchamp, once a court determines the date of accrual, the court must then determine whether a notice of claim was timely sent within the 90 day period as required by the NJTCA.   As noted above, although the Court need not decide whether the discovery rule applies to toll the accrual date, even assuming that Plaintiff's cause of action accrued on November 1,

---

[4]In that regard, however, the Court notes that the accrual date in this matter is likely the date of Plaintiff's surgery. As in Beauchamp and McDade, it cannot be contested that Plaintiff knew of his injury immediately following surgery on January 12, 2010 since he discussed it with the medical staff and Dr. Barsoum.  Moreover, Plaintiff retained an attorney on March 2, 2010, less than two months following his surgery, to investigate a potential malpractice action against RWJ and the physicians who provided his anesthesia during surgery.  Finally, case law demonstrates that the discovery rule will not toll the date of accrual simply because a claimant does not know the actual identity of the tortfeasor. See e.g., McDade, 2011 WL 6413840, at * 8 ("Given plaintiffs' awareness of the injury, and their knowledge that the entity responsible for the pipe was a potential tortfeasor, the discovery rule does not toll the date of accrual of plaintiffs' cause of action").

2010, the date on which Plaintiff received his medical records, Plaintiff would have been required to serve a Notice of Claim on or before February 1, 2011.  This Plaintiff did not so do. Thus, the Court finds that Plaintiff's notice of claim was not timely served.

c.      Whether "Extraordinary Circumstances" Justify the Delay

If a court determines that a notice of claim was not timely filed, the Court must then determine whether extraordinary circumstances exist that would justify the late notice. Beauchamp, 164 N.J. at 118.   As discussed above, the NJTCA provides an exception to the 90 day filing deadline and allows a claimant to file within one year after the accrual of a claim per the discretion of a court.  N.J.S.A. § 59:8-9.  Specifically, permission to file a late Notice of Claim requires a showing that: (1)  the public entity or public employee will not be "substantially prejudiced" by the granting of such permission; and (2) that there are sufficient reasons, based upon the personal knowledge of the affiant, constituting "extraordinary circumstances" for the failure to file a notice of claim within the ninety-day window prescribed by N.J.S.A. § 59:8–8.

In the instant matter, Plaintiff contends that the following extraordinary circumstances warrant this Court's discretion in permitting the late filing of the Notice of Claim: (1) Plaintiff retained counsel within two months of his hospital admission; (2) Plaintiff followed the proper procedures for asserting an ordinary medical malpractice claim; (3) RWJ did not provide plaintiff with his hospital chart until November 2010; (4) Plaintiff did not discover that there was a causal connection between his awareness during surgery and the treatment by the Defendants; and (5) Plaintiff was not aware that the Defendants were employees of UMDNJ until Defendants filed their motion for summary judgment on August 5, 2011.  The Court does not agree.

14

Initially, the Court notes that the term "extraordinary circumstances" is not defined in the Tort Claims Act and the existence of extraordinary circumstances must be determined by the courts on a case-by-case basis.  Cliett v. City of Ocean City, Civ No. 06-4368, 2007 WL (D.N.J. Aug. 24, 2007).  Importantly, ignorance of the law or the NJTCA's 90 day notice requirement, without more, do not qualify as extraordinary circumstances justifying a delay in filing a Notice of Claim.  Forcella v. City of Ocean City, 70 F.Supp.2d 512, 517 (D.N.J. 1999).  Moreover, a claimant's lack of diligence in determining the proper defendant to an action does not constitute extraordinary circumstances.  For example, in Blank v. City of Elizabeth, 162 N.J. 150, 151 (1999), the New Jersey Supreme Court found that a 61-year old pedestrian who tripped over a pipe protruding from the sidewalk did not show extraordinary circumstances for an eight-month delay in filing her Notice of Claim against the City of Elizabeth (she had first sued a private landowner) because mere visual inspection of the place of the accident would have led the plaintiff-pedestrian to conclude that the pipe was owned by the public entity.

In the instant matter, even assuming that the Plaintiff's cause of action did not accrue until November 1, 2010, the date he received his medical records, Plaintiff has presented no extraordinary circumstances to warrant permission to file a late Notice of Claim after February 1, 2011, the last day of the 90 day statutory period.  Initially, the Court notes that Plaintiff's receipt of his medical records on November 1, 2010 is not sufficient to warrant leave to file a late Notice of Claim above and beyond the 90 day statutory period.  Indeed, Plaintiff has presented nothing to the Court that would have precluded him, in the exercise of reasonable diligence, from discovering that Defendants were state employees between November 1, 2010 and February 1, 2011 and filing a timely Notice of Claim as a result.

15

Moreover, the Court finds Plaintiff's assertion that he did not discover the causal connection between his awareness during surgery and the anesthesia until he received an expert report, to be entirely disingenuous. Indeed, Plaintiff avers that immediately following surgery, he advised the medical staff that he" was awake during the surgery and felt pain related thereto." Pl's Aff. ¶ 2. Further, following his surgery, Plaintiff had a conversation with Dr. Barsoum concerning the amount of anesthesia he received and Dr. Barsoum advised Plaintiff that, in the future, he should warn other physicians that he may need higher amounts of anesthesia. Lenza Dec., Ex. C. Moreover, Plaintiff clearly knew something was amiss regarding the anesthesia he received because less than two months after his discharge from RWJ, Plaintiff retained counsel to investigate <u>a medical malpractice case against the medical providers who rendered anesthesia</u> services to him on January 12, 2010. Pl's Aff. ¶ 4.

Finally, to the extent Plaintiff argues that he was not aware that Defendants were public employees until Defendants filed the instant motion, it is well-established that a claimant's lack of diligence does not constitute extraordinary circumstances warranting a court's discretion to permit late filing of a Notice of Claim. <u>McDade v. Siazon</u>, 2011 WL 6413840, at *8. In that regard, the fact that Plaintiff's medical records not only identified the Defendants by name, but also included the consent forms signed by Plaintiff's wife advising that some treating physicians at RWJ are state employees, Plaintiff's failure to exercise reasonable diligence to investigate whether, in fact, the Defendants who provided his anesthesia were state employees is inexcusable. Indeed, rather than demonstrate extraordinary circumstances warranting this Court's discretion, Plaintiff's failure to determine whether Defendants were state employees based on the medical records he received in November 2010 demonstrates Plaintiff's failure to

exercise even a modicum of diligence in prosecuting this action.

Finally, the Court finds Plaintiff's reliance on <u>Lowe v. Zarghami</u>, 158 N.J. 606, to be unavailing. In <u>Lowe</u>, the New Jersey Supreme Court held that extraordinary circumstances existed to warrant the court's discretion in permitting the late filing of a Notice of Claim. There, the court found that there " was no evidence supporting the conclusion that [plaintiff]  knew [defendant] was a UMDNJ employee. Although [plaintiff] was aware of the identity of the potential defendant, [she] had no reason to suspect that her doctor was even associated with a public entity. The doctor's evidence to the contrary is unconvincing. He does not recall wearing his UMDNJ badge to his meeting with [plaintiff]; he does not recall discussing his employment status." <u>Id</u>. at 629.  Unlike <u>Lowe</u>, in the instant matter, upon Plaintiff's admission to RWJ, Plaintiff's wife signed a form consenting to his treatment that advised that some treating physicians were employed by UMDNJ and the State of New Jersey.  Moreover, the forms advised that state employees wear badges identifying their association with the state and Defendants aver that they were, in fact, wearing such badges during Plaintiff's surgery. Furthermore, unlike in <u>Lowe</u>, where the court found that Plaintiff would have no reason to know that her doctor was associated with a public entity, here, at the latest, once Plaintiff received his medical records on November 1, 2010, Plaintiff had every reason to suspect that Defendants may be state employees.  Thus, with the exercise of reasonable diligence, Plaintiff could have, and should have, discovered that Plaintiffs were state employees, and, as a result, filed a timely Notice of Claim.  Instead, Plaintiff waited an additional five months, until he received the report of an expert opining that Defendants were potentially negligent in rendering anesthesia to file the instant Complaint.  Moreover, the Court notes that Defendants filed an answer in June 2011

17

asserting, in relevant part, that Plaintiff's recovery was barred by the provisions of the NJTCA. However, Plaintiff did not even attempt to file a Notice of Claim until August 9, 2011, after receiving Defendants' motion for summary judgment, more than two months after receiving Defendants' answer and five months after receiving the expert report.  This is plainly insufficient. Because Plaintiff has failed to demonstrate any extraordinary circumstances that would warrant this Court's discretion in permitting him leave to file a late Notice of Claim, the Court finds that Plaintiff's claims are barred by the NJTCA.

## IV.    CONCLUSION

   For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Leave to File Late Notice of Claim is DENIED.

Dated: January 13, 2012     /s/ Freda L. Wolfson_____
           Freda L. Wolfson, U.S.D.J.